## LADELL RHODES V. THE STATE.

No. 20166. Delivered February 15, 1939.
Rehearing Denied April 19, 1939.

The opinion states the case.

*Banks, Nichols & Prothro,* of Marshall, for appellant.

*Benjamin Woodall,* former County Attorney, and *Clayton W. Field, Jr.,* former Assistant County Attorney, both of Marshall, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Willie Mae Fields by cutting and stabbing her with a knife.

The testimony of the State was, in substance, as follows: The homicide occurred on the 25th of April, 1938. Appellant and deceased had gone together for several months. Two or three days prior to the killing they had a difficulty which resulted in the arrest of appellant upon a charge of simple assault upon the deceased. At the time of the difficulty to which we have just referred, appellant said to the deceased: "Willie Mae, you have run the last time. When I get you to the grave yard I will cut your G—— d—— neck off and mine too." On the day of the homicide appellant was released from jail about 3 p. m. Shortly after 8 p. m. the deceased, her sister and one Rosborough were sitting in deceased's house talking when appellant knocked on the back door. Someone asked who was knocking and appellant replied: "The big bad wolf." At this juncture Rosborough opened the door and appellant ran into the house. After appellant entered, deceased and her sister ran out the front door, followed by appellant. Deceased ran southward, pursued by appellant, and her sister ran northward to a store to call a policeman. Deceased begged appellant not to hurt her. No one saw appellant stab deceased. However, when the officers responded and came to the scene of the homicide they found deceased and appellant lying on the ground about forty yards from the house of deceased. The throat of the deceased had been cut "from ear to ear." Her fingers on both of her hands were cut, with the exception of the thumb on the right hand. There were several other cuts upon her face. She had already expired when the officers reached the scene. Appellant was lying on the ground near the deceased with his throat cut and with a bloody knife in his hand.

Appellant did not testify.

The evidence is deemed sufficient to support the judgment of conviction.

It is shown in bill of exception No. 1 that appellant objected to proof to the effect that two or three days prior to the homicide he had assaulted the deceased. The bill of exception is qualified by the trial court as follows: "The testimony tended to throw light on the homicide, show threats to kill and malice toward deceased, and was admitted for that purpose." The testimony in question was properly admitted. We quote from Branch's Ann. P. C., sec. 1881, as follows: "Antecedent menaces, prior assaults, former grudges, and former quarrels between the parties may be proven to show the state of mind and malice of the accused at the time of the alleged offense and to establish a motive for its commission."

Bill of exception No. 2 recites that appellant objected to proof of the fact that he had been placed in jail as a result of the assault he made upon deceased two or three days prior to the homicide, the objection being that the record of the desk sergeant would be the best evidence of the fact that appellant had been so incarcerated. The bill, as qualified by the trial judge, shows that the witness from whom such testimony was elicited stated without objection on the part of appellant that he (witness) personally put the appellant in jail at the police station. The bill fails to reflect error.

Bill of exception No. 3 shows that the State introduced in evidence, over appellant's objection, a complaint filed prior to the homicide charging him with having committed a simple assault upon the deceased. This testimony was properly receivable. Again, we quote from Branch's Ann. P. C., sec. 1880, as follows: "An indictment pending against defendant for an assault with intent to murder the deceased is admissible as tending to establish a motive on the part of the defendant impelling him to the murder of the deceased." It might be added that the bill, as qualified, shows that the State had introduced proof, without objection on the part of appellant, that appellant had been placed in jail some three days prior to the homicide on a charge of having committed an assault on the deceased. Again, it had been shown without objection that a complaint had been duly made and filed charging appellant with having committed said offense. Thus it would appear that the jury had already been apprised by the testimony which had been received without objection that the complaint to which objection was interposed had been filed. In other words, substantially the same testimony as that objected to had gone before the jury without objection on the part of appellant. At all events, the complaint was properly admitted in evidence.

Failing to find reversible error, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant urgently insists in his motion that the facts herein adduced do not measure up to the standard demanded under a case of circumstantial evidence in that they do not exclude every other reasonable hypothesis than that of the appellant's guilt.

In answer we not only refer to the brief summary of the facts found in the original opinion herein, but also to the further facts appearing in the record.

At the prior arrest of appellant for a simple assault upon the deceased the arresting officer testified on this trial that he took off appellant's person a certain kind of knife commonly called an "East Dallas Special." Upon appellant's release from jail some three hours or so prior to this tragedy the desk sergeant returned this knife to appellant, who took possession of same. Other witnesses then testified that when they arrived at the scene of this homicide they found a knife, some say, of similar appearance, and one says the same knife was delivered to the attending magistrate. One witness testified that he took this knife out of the hand of appellant, who was lying bleeding on the ground near the dead body of deceased; that such knife was covered with blood. The testimony of the deceased girl's sister, Johnnie Mae Fields, was to the effect that at the time of the killing, while witness was fleeing from the scene, she heard her sister, the deceased, say: "I wouldn't do that, please don't do that." The witness Horace Rosborough—who was in the room with the two Fields girls at the time, and who opened the door and let appellant in the room, just after appellant had said that it was "the bold, bad wolf" at the door—testified that as appellant ran in the room he, the witness, ran out, and as he ran out he heard the deceased say: "Don't hurt me, Ladell." It also appears that immediately afterwards the deceased was lying on the ground with her windpipe severed, and her throat cut, as well as various other knife wounds on her hands and body, and appellant was lying near her with his throat cut and a bloody knife in his hand. There was no one else near these bodies.

After a further careful scrutiny of the facts we are still impressed with the view that the jury were well within their province not only in their belief that such facts were sufficiently strong in their probative force to exclude every other reasonable hypothesis, but that they were also within the law when they required of appellant the extreme penalty of the law.

In this belief, the motion is overruled.